IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA



Case No. _____

MOUNT SINAI MEDICAL CENTER OF
GREATER MIAMI, INC., n/k/a MOUNT
SINAI MEDICAL CENTER OF FLORIDA,
INC., a Florida corporation,

        Plaintiff,

v.

HEIDRICK & STRUGGLES, INC., a
Delaware corporation,

        Defendant.

_____/

## NOTICE OF REMOVAL

      PLEASE TAKE NOTICE THAT Defendant, Heidrick & Struggles, Inc. ("Heidrick"),

respectfully removes this action pursuant to 28 U.S.C. §§1441(a) and 1446 from the Circuit

Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida to the United

States District Court for the Southern District of Florida on the following grounds:

## I.     Procedural History

      1.     This action was commenced by Plaintiff Mount Sinai Medical Center

("Mount Sinai") against Heidrick & Struggles International, Inc. ("HSII") on December 20, 2002

by the filing of a complaint (the "Complaint"), docketed Case No. 02-31871 CA 21 in the Circuit

Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The Complaint

was never served on HSII or anyone else.



MORGAN, LEWIS & BOCKIUS LLP
5300 FIRST UNION FINANCIAL CENTER  200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 579-0300

2.      On January 15, 2003, Mount Sinai filed an amended complaint (the "Amended Complaint") substituting Heidrick as the Defendant in place of HSII.  A summons was subsequently issued by the clerk of the court on January 16, 2003, and on that same date, the summons and Amended Complaint were personally served on Heidrick's registered agent for service of process in Florida.  True and correct copies of the summons and Amended Complaint in Case No. 02-31871 CA 21 are attached hereto as Exhibit 1.

3.      This Notice of Removal is timely under 28 U.S.C. § 1446(b) in that it has been filed within thirty days of service of legal process upon Heidrick. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (defendant's time to remove under section 1446(b) is triggered solely by simultaneous service of summons and complaint or receipt of complaint following formal service of summons).  No answer or responsive pleading directed to the Amended Complaint has been filed by Heidrick in this case in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

## II.    Removal to This Court Based Upon Original Diversity Jurisdiction is Appropriate Under 28 U.S.C. §§ 1441(a)

4.      Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending."  Original federal jurisdiction exists over this action pursuant to 28 U.S.C. § 1332 in that it is a suit between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

MORGAN, LEWIS & BOCKIUS LLP
5300 FIRST UNION FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 579-0300

5.       The United States Court for the Southern District of Florida, Miami Division, is the appropriate federal venue for filing a Notice of Removal in this case because it encompasses the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, where the instant action is pending. *See* 28 U.S.C. § 89 (situating Miami-Dade County, Florida within this federal judicial district).  Accordingly, Heidrick seeks removal of this action to this Court.

6.       In light of the clear grounds for removal based upon diversity jurisdiction under 28 U.S.C. § 1332, Heidrick need not address any potential basis for removal based upon federal question jurisdiction under 28 U.S.C. § 1331.

## III.      There is Complete Diversity of Citizenship Between Plaintiff and Defendant

7.       Heidrick is a Delaware corporation, authorized to do business in the State of Florida, with its principal place of business in Chicago, Illinois.  (Am. Compl. ¶ 2); *see also* Corporate Information Sheet, Division of Corporation, Florida Department of State, attached as Exhibit 2.  Plaintiff Mount Sinai is a Florida corporation, with its principal place of business in Miami Beach, Florida. *See also* Corporate Information Sheet, Division of Corporation, Florida Department of State, attached as Exhibit 3.  Accordingly, complete diversity of citizenship exists between the Plaintiff and Defendant in this case.

## IV.      The Amount in Controversy Exceeds this Court's Jurisidictional Minimum

8.       The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, based upon Mount Sinai's description of its alleged injuries and claims for damages in the Amended Complaint.  In short, in its two count Amended Complaint, Mount Sinai alleges that Heidrick, an executive search firm hired by Mount Sinai to find potential

1-MI/471791.1
02/04/03

3

MORGAN, LEWIS & BOCKIUS LLP
5300 FIRST UNION FINANCIAL CENTER  200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 · TELEPHONE (305) 579-0300

candidates to fill the position of Mount Sinai's Chief Executive Officer, committed fraud and breached an alleged fiduciary duty to Mount Sinai in connection with Heidrick's search for the CEO candidate for Mount Sinai.  (Am. Compl. ¶¶ 5-7; 27-28).

9.     Bruce M. Perry was ultimately chosen by Mount Sinai in 1998 to be its CEO. (Am. Compl. ¶ 22).  However, years into Mr. Perry's tenure as CEO, Mount Sinai allegedly lost $64,800,000 in operational revenue during the year 2001. (Am. Compl. ¶¶ 22 and 25).

10.     With respect to its claimed damages, Mount Sinai seeks to recoup the $169,000 in fees it paid to Heidrick for finding Mr. Perry, as well as millions of dollars in damages for the operational losses it experienced in 2001 that were allegedly caused by Heidrick's breach of an alleged fiduciary duty and fraud in 1998. (Am. Compl. ¶¶ 21, 28 and 30).

11.     Because the amount of Mount Sinai's alleged damages far exceeds $75,000 (exclusive of interest and costs), the amount in controversy requirement for diversity jurisdiction is met.

12.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being contemporaneously filed with the clerk of the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida and served upon Plaintiff, Mount Sinai.

13.     No admission of fact, law or liability is intended by this Notice of Removal, and all defenses, affirmative defenses and motions are hereby reserved.

1-MI/471791.1
02/04/03

4

MORGAN, LEWIS & BOCKIUS LLP
5300 FIRST UNION FINANCIAL CENTER  200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 · TELEPHONE (305) 579-0300

WHEREFORE, Defendant, Heidrick & Struggles, Inc., removes the above-captioned action from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida to the United States District Court for the Southern District of Florida.

Dated:  February 4, 2003

Respectfully submitted,

Morgan, Lewis & Bockius LLP
Counsel for Defendant Heidrick & Struggles, Inc.
5300 Wachovia Financial Center
200 S. Biscayne Blvd.
Miami, Florida  33131-2339
Telephone:      305.415.3000
Facsimile:      305.415.3001

By: _____
    David A. Coulson, Esq.
    Florida Bar No. 176222
    Jill E. Dokson, Esq.
    Florida Bar No. 155039

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Removal was sent via U.S. Mail this 4th day of February, 2003, to **Richard L. Lapidus, Esq.**, Law Office of Richard L. Lapidus, 711 City National Bank Building, 25 West Flagler Street, Miami, FL  33130, Counsel for Plaintiff Mount Sinai Medical Center.

_____
David A. Coulson

1-MI/471791.1
02/04/03

5



# CT System

Service of Process Transmittal Form
Plantation, Florida

01/16/2003

Via Federal Express (2nd Day)

TO: Jeanne Worthen
    Heidrick & Struggles, Inc.
    233 South Wacker Drive
    Suite 4200
    Chicago, IL 60606-6303

RE:   **PROCESS SERVED IN FLORIDA**

FOR     Heidrick & Struggles Inc. Domestic State: De

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION:            Mount Sinai Medical Center, of Greater Miami, Inc., etc., Pltf. vs Heidrick & Struggles, Inc., Dft.

2. DOCUMENT(S) SERVED:         Summons, Amended Complaint, Exhibits

3. COURT:                      Miami-Dade County Circuit Court, FL
                               Case Number 02-31871-CA-21

4. NATURE OF ACTION:           Breach of Fiduciary Obligations; misrepresentation regarding the qualifications of Bruce Perry
                               hired by Pltf. to operate the Mount Sinai Medical Center, etc.

5. ON WHOM PROCESS WAS SERVED: CT Corporation System, Plantation, Florida

6. DATE AND HOUR OF SERVICE:   By Process server on 01/16/2003 at 02:35

7. APPEARANCE OR ANSWER DUE:   Within 20 days

8. ATTORNEY(S):    Richard L. Lapidus
                   (305) 577-7279
                   25 W. Flagler Street
                   Suite 711
                   City National Bank Bldg.
                   Miami, FL  33130

9. REMARKS:



**EXHIBIT**

tabbies

**1**

SIGNED     CT Corporation System

PER        Anne Boutilier /DM

ADDRESS    1200 South Pine Island Road
           Plantation, FL  33324
           SOP WS 0005072617

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for
the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that
can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL  CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 02-3187/ CA 21

MOUNT SINAI MEDICAL CENTER
OF GREATER MIAMI, INC., n/k/a
MOUNT SINAI MEDICAL CENTER
OF FLORIDA, INC.,

        Plaintiff,

vs.

HEIDRICK & STRUGGLES, INC.,

        Defendant.

_____/

## CORPORATE SUMMONS

**THE STATE OF FLORIDA:**
**TO EACH SHERIFF OF THE STATE:**

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint on this
Defendant(s):

TO:   HEIDRICK & STRUGGLES, INC.
      By serving its Registered Agent – CT CORPORATION SYSTEM
      1200 South Pine Island Road
      Plantation, Florida 33324

Each Defendant is required to serve written defenses to the Complaint on Plaintiff's Attorney:

        **RICHARD L. LAPIDUS, ESQUIRE**

whose address is:        **25 WEST FLAGLER STREET**
                         **SUITE 711, CITY NATIONAL BANK BUILDING**
                         **MIAMI, FLORIDA 33130**
                         **(305) 577-7279**
                         **(305) 577-7205 (FAX)**



JAN 1 6 2003

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO. 02-31871 CA 21

MOUNT SINAI MEDICAL CENTER
OF GREATER MIAMI, INC., n/k/a
MOUNT SINAI MEDICAL CENTER
OF FLORIDA, INC.,

       Plaintiff,

vs.

HEIDRICK & STRUGGLES, INC.,

       Defendant.

_____/

THE ORIGINAL FILED
ON  JAN 1 5 2003
IN THE OFFICE OF
CIRCUIT COURT DADE CO. FL
CIVIL DIVISION

AMENDED COMPLAINT

Plaintiff sues Defendant and says:

I.

1.      This is an action for damages in excess of $15,000.00.

2.      Heidrick & Struggles, Inc. is a Delaware corporation doing business in the State of Florida.

3.      Heidrick & Struggles is the world's premier provider of executive level search and leadership.   It offers consulting services representing:

      "We partner with our clients with the objectives to build the best leadership teams in the world by helping them hire,

develop and retain the most effective leaders in their industry.
..."

Its services are described as "identifying, evaluating, and recommending for senior executive level positions" qualified candidates.

4.     In 1998, Mount Sinai Medical Center accepted the resignation of its Chief Executive Officer. It sought a new Chief Executive Officer that could deal with the myriad of complex issues inherent in running a major medical center.

5.     In the summer of 1998, members of the Board of Trustees of Mount Sinai contacted Heidrick & Struggles and, in reliance upon their representations as above set forth, retained them to search for, identify, evaluate, and recommend to Mount Sinai a qualified candidate for Chief Executive Officer of the Hospital.

6.     On June 15, 1998, Heidrick & Struggles sent the Chairman of the Board of Trustees of Mount Sinai Medical Center a letter agreement setting out the terms of its representation of Mount Sinai in connection with the search for a qualified Chief Executive Officer. On July 15, 1998, the agreement was signed and returned to Heidrick & Struggles, a copy of said agreement being attached hereto.

7.     By the terms of the agreement Heidrick & Struggles was retained to act as Mount Sinai Medical Center's agent to research and present qualified candidates for the position of President and Chief Executive Officer. Pursuant to representations made by the partner in charge of Heidrick & Struggles in this matter, Mount Sinai was invited to trust Heidrick & Struggles' skill, diligence, and research. It was represented that, in addition to

<u>Mount Sinai v. Heidrick & Struggles</u>
Case No.

the partner in charge, a research associate, an administrative assistant, and partner from the Chicago Office of Heidrick & Struggles would be assigned to the project. Mount Sinai was invited to and, in fact, did establish a fiduciary relationship with Heidrick & Struggles, relying on their claimed expertise and the research and investigative skills of their staff to search out the background of the candidates presented.

8.     Mount Sinai sought a Chief Executive Officer who was honest and had a proven record of successfully running major hospitals which was told to and known by Heidrick & Struggles.

9.     In August of 1998, Heidrick & Struggles sent to Mount Sinai a CONFIDENTIAL EXECUTIVE SUMMARY ON BRUCE PERRY CANDIDATE FOR THE POSITION OF PRESIDENT AND CHIEF EXECUTIVE OFFICER. The SUMMARY was on Heidrick & Struggles' letterhead. It purported to be the result of Heidrick & Struggles extensive research. It was furnished to induce Mount Sinai Medical Center to employ Bruce Perry as its Chief Executive Officer.

10.     The CONFIDENTIAL EXECUTIVE SUMMARY contained material misrepresentations of fact and failed to disclose information material to Mount Sinai's decision on whether to hire Mr. Perry. It contained facts relating to Mr. Perry's service as Chief Executive Officer of both Community Hospitals of Central California and Children's Hospital in Washington, D.C., without disclosing the whole truth regarding his running of those hospitals; including the tremendous financial losses incurred by the hospitals which led to his termination; or his litigation with one of the hospitals.

<u>Mount Sinai  v. Heidrick & Struggles</u>
Case No.

11.    The CONFIDENTIAL EXECUTIVE SUMMARY represented that in Mr. Perry's three years as Chief Executive Officer of the Children's Hospital in Washington, D.C., the hospital was a financial success.   In fact, during the years Mr. Perry was President, the hospital lost $37,000,000.

12.    The CONFIDENTIAL EXECUTIVE SUMMARY describes Mr. Perry as voluntarily leaving Children's Hospital after the whole Board of Directors failed to renew his contract.   In fact, Mr. Perry's contract was not renewed because the hospital was losing money and because while Mr. Perry was firing personnel, he had opened a personal office for himself in Silver Springs, Maryland, near his home, and he had had the hospital buy him a BMW automobile.

13.    The CONFIDENTIAL EXECUTIVE SUMMARY then goes on to describe Mr. Perry's service as Chief Executive Officer of the Community Hospitals of Central California from 1991 to 1996.   The fiscal year of that hospital ended each year August 31st. Mr. Perry was terminated in October of 1996, after the financial results for fiscal 1996 were released.

14.    Although the CONFIDENTIAL EXECUTIVE SUMMARY seemingly paints a picture of a hospital being run as a financial success, in fact, for fiscal 1996, the last year Mr. Perry served as Chief Executive Officer of Community Hospitals, the hospital had a loss of $17,631,000.00, made up of a $10,834,000.00 loss from operations, and  $6,797,000.00 from re-structuring costs.   Prior to the end of its fiscal year Mr. Perry had assured the board of that hospital that the loss for 1996 would be no more than $2,000,000.  Nowhere in the CONFIDENTIAL EXECUTIVE SUMMARY nor in any of the discussions between the

RICHARD L. LAPIDUS
CITY NATIONAL BANK BUILDING, 25 WEST FLAGLER STREET, MIAMI, FLORIDA 33130 • TEL. (305) 577-7279

<u>Mount Sinai  v. Heidrick & Struggles</u>
Case No.

officers of Heidrick & Struggles, Bruce Perry, and Trustees of Mount Sinai Medical Center,

were the facts set out or revealed.

15.    The CONFIDENTIAL EXECUTIVE SUMMARY represented that while Mr.

Perry was the Chief Executive Officer "the system enjoyed a bond upgrading from BBB+ to

A and A-". In fact, the system's bond rating was lowered from A- to BBB+ because of:

> "Financial performance for full fiscal year 1996 has weakened
> considerably.   . . .   Absolute cash levels have declined
> significantly. . . ."

16.    The CONFIDENTIAL EXECUTIVE SUMMARY represented:

> "He was managing a highly successful diversified delivery
> system."

In fact, because he had terminated much of the nursing staff of the hospital, unlicensed

persons were caring for patients and former employees were picketing the hospital.

17.    In order to picture Mr. Perry as having run a large hospital, the

CONFIDENTIAL EXECUTIVE SUMMARY represented that the Community Hospitals of

Central California was a 956-bed hospital at the time Mr. Perry was its Chief Executive

Officer.  Actually, Community Hospitals of Central California was a 539-bed hospital.  The

CONFIDENTIAL EXECUTIVE SUMMARY represented that net revenues for Community

Hospitals of Central California for 1996 were $350,000,000.   In fact, the total revenues for 1996 were $214,385,000.

18.   The CONFIDENTIAL EXECUTIVE SUMMARY represented that Mr. Perry's contract was not renewed because the Chairman of the Board of Trustees of the Hospital had disagreed with him in the past and because the Board felt that Mr. Perry, having implemented many new systems, a new person should be brought in to run them.   This fact was false.   Mr. Perry's contract was not renewed because of the enormous losses taken by the hospital in fiscal 1996, because judgments had been obtained against the hospital by physicians groups whose contracts Mr. Perry had terminated and because Mr. Perry had decimated the nursing staff of that hospital.

19.   Mr. Perry had filed claims against the Hospital for severance pay, which had been arbitrated before a panel of California arbitrators.   The panel found for the Hospital. These facts were omitted.

20.   All of the representations above set forth in the CONFIDENTIAL EXECUTIVE SUMMARY were known to be false by Heidrick & Struggles or were made by Heidrick & Struggles without knowledge of their truth or falsity upon a representation made that they were the result of Heidrick & Struggles own research into the matter.   All of the representations were made with the intent that Mount Sinai Medical Center would rely upon them.   The omitted matters were known to Heidrick & Struggles or should have been known to them.

21.   In reliance upon the representations in the CONFIDENTIAL EXECUTIVE SUMMARY, Bruce Perry was hired as the Chief Executive Officer of Mount Sinai Medical

<u>Mount Sinai v. Heidrick & Struggles</u>
Case No.

Center in December of 1998.   Heidrick & Struggles was paid $169,000.00 in fees for finding

Mr. Perry, researching his job experience and education, and presenting him to the Hospital.

22.    Mr. Perry, upon being hired as the Chief Executive Officer of Mount Sinai

Medical Center, hired Heidrick & Struggles to fill various positions in the Hospital and

caused the Hospital to pay hundreds and hundreds of thousands of dollars in fees to Heidrick

& Struggles for their efforts.

23.    In 1999, Mount Sinai incurred losses which were expected, as Mr. Perry

seemingly sought to correct the problems incurred in the past and cut down on what was

perceived by Mr. Perry to be an inflated staff of employees.   The Business Office, which had

charge of billings, was drastically downsized.   Year end 2000 reflected a much lower loss

because of the cuts effected by Mr. Perry.

24.    In January of 2001, Mr. Perry and Harvey Smith, the Chief Operating Officer

who had been hired by Mr. Perry through Heidrick & Struggles, presented to the Executive

Committee of Mount Sinai Medical Centre a budget for 2001 which reflected that the

Medical Center should expect a net profit of $3,500,000.    Mr. Perry had budgeted the

expenses of the Hospital based upon  expected income from claimed renegotiations with the

Hospital's major insurance payors.  Most of those insurance contracts were not renegotiated,

but the monthly statements presented to the Board reflected this claimed "renegotiation".

During the first five months of 2001, Mr. Perry and Mr. Smith presented to the Executive

Committee financial statements of the Hospital reflecting either a small loss or small profit

each month.   By June of 2001, however, it became apparent that the Hospital would be

running out of money and further, that the Business Office, whose staff had been cut by Mr.

7

Perry in order to lower the expenses of the previous year, had ceased to operate.   The Hospital was forced to bring in as consultants, its outside accountants Deloitte & Touche, to operate the Business Office.   In the summer of 2001, Deloitte & Touche reported to the Executive Committee of the Hospital that enormous losses had been incurred during the first six months of operation, losses not reflected in any of the financial statements given to the Board by Mr. Perry and Mr. Smith.  Mount Sinai paid to Deloitte & Touche fees for their consulting service in running Mount Sinai's Business Office and in determining why the Hospital was running out of money.

25.     Bruce M. Perry was formally terminated as Chief Executive Officer of Mount Sinai Medical Center on October 8, 2001.  For the complete year 2001, Mount Sinai Medical Center lost $64,800,000 in operations.  The loss was occasioned by the incompetence of Mr. Perry and his staff, many of whom had been hired through the efforts of Heidrick & Struggles, and Mr. Perry's complete inability to run a Hospital the size of Mount Sinai Medical Center.

26.     The enormous losses occasioned by Mount Sinai Medical Center under Mr. Perry's stewardship were plainly foreseeable in light of his past experiences in running the Children's Medical Center in Washington, D.C. and the Community Hospital in Fresno, California.

27.     In order to understand why the Hospital had suffered such an enormous loss in 2001, Mount Sinai, upon Mr. Perry's termination, contacted previous hospitals in which he had worked.  It was then that it discovered that the representations made in the resume of Bruce Perry, prepared by Heidrick & Struggles, were, as above set forth, false.  That, in fact,

<u>Mount Sinai v. Heidrick & Struggles</u>
Case No.

the hospitals he had run had incurred enormous losses and that he had previously misrepresented operating figures to hospital boards.

28.    Plaintiff has been damaged by the fraud of Heidrick & Struggles. The losses incurred during Bruce Perry's term as Chief Executive Officer were plainly foreseeable and proximately caused by Heidrick & Struggles fraud.

II.

29.    Plaintiff repeats and realleges the allegations of Paragraphs 1 to 27 as if here set forth.

30.    Defendant, Heidrick & Struggles breached its fiduciary obligation to the Plaintiff by misrepresenting the qualifications of Bruce Perry to operate the Mount Sinai Medical Center. The losses incurred during Mr. Perry's term as Chief Executive Officer of Mount Sinai Medical Center were a direct and proximate result of this breach of fiduciary obligation.

WHEREFORE, being injured, Plaintiff demands damages.

LAW OFFICE OF RICHARD L. LAPIDUS
Attorney for Plaintiff
711 City National Bank Building
25 West Flagler Street
Miami, Florida 33130
(305)577-7279   (305)577-7205 (FAX)

By _____
RICHARD L. LAPIDUS
Florida Bar No. 045460

9

# HEIDRICK & STRUGGLES

Consultants in Executive Search

June 15, 1998

Received

JUL 20 1998

Administration

PERSONAL AND CONFIDENTIAL

Mr. Leonard L. Abess
President & CEO
City National Bank of Florida
25 W. Flagler Street, 6th Floor
Miami, FL 33130

Dear Mr. Abess:

Thank you for retaining us to assist in the identification and selection of your President and Chief Executive Officer for Mt. Sinai Medical Center in Miami, FL. It will be our responsibility to present candidates to you for your final decision.

After I complete the interviews with all of the interested parties, we will publish the draft specification and submit it to you for any changes you feel are desirable. The final specification will be distributed within our organization so our entire recruiting staff will be aware of the assignment.

As you know, we work on a retainer arrangement by project. Our fee is one-third of the total first year's estimated annual cash compensation for each candidate. With regard to compensation for billing purposes, we have assumed an annual compensation of $455,000 (an estimated salary of $350,000 and an estimated likely and available bonus of 30 percent or $105,000). We will invoice our retainer fee of $151,667 as follows: June 16, 1998, $25,278; July 31, 1998, $25,278; August 31, 1998, $50,556; and September 30, 1998, $50,556. Expenses, which are invoiced monthly, include direct out-of-pocket expenses incurred on your behalf plus certain allocated costs relating to each search assignment. Direct expenses include travel, sourcing and interviewing expenses, courier, and external communications and research, as well as related costs incurred by the candidates and our personnel relating to this assignment. Allocated costs include charges for internal research costs (except external database charges), report production, internal data/network communications, photocopying, fax, and data processing. Allocable expenses are 10 percent of the retainer over the first four invoices up to $10,000. All subsequent invoices will have an additional allocable expense of $100 as long as the search is open and other expenses are being billed.

When this assignment is completed and annual compensation is determined, we will reconcile our fee and send our final invoice. Payment of our fee and expenses is not contingent upon the hiring of one of our candidates.

It is our practice to begin work upon receipt of your written acknowledgment of this letter, approval of the position specification, and your approval for payment of our first invoice.

It is hoped that the search can be completed before the end of the billing period. Should this not occur, we will continue the search without an additional fee for up to six months from the start of the search, charging only expenses. In the unlikely event that the search is not successfully completed three months following the final billing, we may suggest a reevaluation of the project to determine how the search should proceed.

Mr. Leonard L. Abess, President & CEO          -2-          June 15, 1998

If this project is canceled within the first three months, we will charge only for the pro rata portion of the fee, plus expenses up to the date the notice of cancellation is received. If it should become necessary to cancel the search after the three-month period, the full retainer will be considered earned.

As part of our client relationship, it is our policy not to recruit executive level employees from a "client" for a specified period of time. We will not recruit employees of Mt. Sinai Medical Center, in Miami, FL, from the date of this letter, for one year, unless an exception applies. Exceptions to this policy include instances where a client ceases to exist, authorizes an exception, violates this agreement, or has a significant change in ownership with our relationship ending; and client executives who, with the client's knowledge, are seeking other employment opportunities, or who, prior to the date of this letter, were in the process of being recruited. If an outside candidate presented by Heidrick & Struggles is employed by Mt. Sinai Medical Center and asked to resign or is discharged by Mr. Sinai Medical Center within one year of employment for a reason other than one known to Mt. Sinai at the time of his/her employment, then Heidrick & Struggles will do a new search for no additional retainer fee, charging only for allocable and reimbursable expenses.

It is our practice to assign two individuals to each search effort. Kenneth L. Rattner of our Chicago office will be working with me and will be co-responsible throughout the search. You should feel free to contact Ken at 312/496-1787 if you cannot reach me. Also, my Research Associate, Joan Schlechter, or Administrative Assistant, Pam Adley, will be pleased to assist you with any questions you may have. If you have any suggestions or comments at any time, we would be happy to have them.

Sincerely,

Chris Clark
Partner

WCC/pa
cc:    Ken Rattner

## ACKNOWLEDGMENT

Please acknowledge your receipt and acceptance of this letter by signing and returning the enclosed copy to me.

_Signature_

Chairman of the Board, Mt. Sinai
_Title_

July 15, 1998
_Date_

Florida Department of State, Division of Corporations

# Corporations Online

www.sunbiz.org

## Public Inquiry

## Foreign Profit

## HEIDRICK & STRUGGLES, INC.

### PRINCIPAL ADDRESS
233 SOUTH WACKER DR., STE. 4200
CHICAGO IL 60606

### MAILING ADDRESS
233 SOUTH WACKER DR., STE. 4200
CHICAGO IL 60606

| Document Number | FEI Number | Date Filed |
|---|---|---|
| F99000001237 | 364277938 | 03/05/1999 |

| State | Status | Effective Date |
|---|---|---|
| DE | ACTIVE | NONE |

## Registered Agent

| Name & Address |
|---|
| C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION FL 33324 |

## Officer/Director Detail

| Name & Address | Title |
|---|---|
| PUCKETT, JEANNE S<br>233 S WACKER DR STE 4200<br><br>CHICAGO IL 60606 | AS |
| MCHUGH, LYNN L<br>233 SOUTH WACKER DR., STE. 4200<br><br>CHICAGO IL 60606 | AT |
| MICHAEL, LAUDIZO T<br>233 SOUTH WACKER DR., STE. 4200<br><br>CHICAGO IL 60606 | AT |
| PIERS, MARMION<br>100 PICACADILLAY | P |

**EXHIBIT**

**2**

| | |
|---|---|
| LONDON UK wlv- 9fn | |
| KEVIN, SMITH J<br>233 SOUTH WACKER DR STE 4200<br><br>CHICAGO IL 60606 | T |
| STEPHANIE, ABRAMSON W<br>245 PARK AVE STE 4300<br><br>NEW YORK NY 10167 | S |

## Annual Reports

| Report Year | Filed Date | Intangible Tax |
|---|---|---|
| 2000 | 02/29/2000 | |
| 2001 | 02/06/2001 | |
| 2002 | 02/11/2002 | |

[ Previous Filing ]            [ Return to List ]            [ Next Filing ]

No Events
No Name History Information

## Document Images

Listed below are the images available for this filing.

| |
|---|
| 02/11/2002 -- ANN REP/UNIFORM BUS REP |
| 02/06/2001 -- ANN REP/UNIFORM BUS REP |
| 02/29/2000 -- ANN REP/UNIFORM BUS REP |
| 03/05/1999 -- Foreign Profit |

**THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT**

## Corporations Inquiry                    Corporations Help

Florida Department of State, Division of Corporations

# Corporations Online
### Public Inquiry
www.sunbiz.org

## Florida Non Profit

### MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC.

**PRINCIPAL ADDRESS**
4300 ALTON ROAD
MIAMI BEACH FL 33140

**MAILING ADDRESS**
4300 ALTON ROAD
LEGAL DEPARTMENT
MIAMI BEACH FL 33140
Changed 03/03/1999

| Document Number | FEI Number | Date Filed |
|---|---|---|
| 710931 | 590624424 | 05/23/1966 |

| State | Status | Effective Date |
|---|---|---|
| FL | ACTIVE | NONE |

| Last Event | Event Date Filed | Event Effective Date |
|---|---|---|
| AMENDED AND RESTATED ARTICLES | 12/11/2000 | NONE |

## Registered Agent

| Name & Address |
|---|
| FRIEDLAND, PRISCILLA<br>4300 ALTON ROAD<br>MIAMI BCH FL 33140 |
| Name Changed: 07/12/2000 |
| Address Changed: 01/27/1998 |

## Officer/Director Detail

| Name & Address | Title |
|---|---|
| JONENREICH, STEVEN D<br>4300 ALTON ROAD<br>MIAMI BEACH FL 33140 | PCEO |
| GELB, MARTIN J | |

**EXHIBIT**
**3**

| | |
|---|---|
| 4300 ALTON RD<br><br>MIAMI BEACH FL 33140 | CD |
| GELB, MARTIN J<br>4300 ALTON RD<br><br>MIAMI BEACH FL 33140 US | D |
| STONE, ROBERT<br>4300 ALTON RD.<br><br>MIAMI BEACH FL 33140 | CD |
| HILDEBRANDT, MARK H<br>4300 ALTON ROAD<br><br>MIAMI BEACH FL 33140 US | TD |
| BERGMANN, GEORGE<br>4300 ALTON RD.<br><br>MIAMI BEACH FL 33140 | SD |

## Annual Reports

| Report Year | Filed Date | Intangible Tax |
|:---:|:---:|:---:|
| 2000 | 03/07/2000 | |
| 2001 | 02/12/2001 | |
| 2002 | 04/07/2002 | |

[ Previous Filing ]    [ Return to List ]    [ Next Filing ]

View Events
View Name History

## Document Images

Listed below are the images available for this filing.

04/07/2002 -- COR - ANN REP/UNIFORM BUS REP
02/12/2001 -- ANN REP/UNIFORM BUS REP
12/11/2000 -- Amended and Restated Articles
07/26/2000 -- Amendment
07/12/2000 -- Reg. Agent Change
03/07/2000 -- ANN REP/UNIFORM BUS REP
03/03/1999 -- ANNUAL REPORT
05/04/1998 -- Name Change
01/27/1998 -- ANNUAL REPORT
01/30/1997 -- ANNUAL REPORT
05/01/1996 -- 1996 ANNUAL REPORT

**THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT**

Division of Corporations

**Corporations Inquiry**                    **Corporations Help**

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

MOUNT SINAI MEDICAL CENTER OF GREATER MIAMI, INC., n/k/a
MOUNT SINAI MEDICAL CENTER OF FLORIDA, INC.

**DEFENDANTS**

HEIDRICK & STRUGGLES, INC.

03 - 20256

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT, COOK COUNTY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

CIV-MARTINEZ

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

Dade 03CV/20256/Jem/Dube

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard L. Lapidus, Esq.
Law Office of Richard L. Lapidus
711 City National Bank Building
25 West Flagler Street
Miami, FL 33130
Telephone: (305) 577-7279
Facsimile: (305) 577-7205

**ATTORNEYS (IF KNOWN)**

David A. Coulson, Esq. & Jill E. Dokson, Esq.
Morgan, Lewis & Bockius LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2339
Telephone: (305) 415-3450
Facsimile: (305) 415-3001

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: Action filed in Duval County, Florida

| II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY) | III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only) (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) |
|---|---|

| | | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|
| ☐ 1 Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in item III) | Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | FORFEITURE/PENALTY | A BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | | ☐ 850 Securities/ Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 690 Other | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | **A LABOR** | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S.) Plaintiff or Defendant) | ☐ 890 Other Statutory Actions A or B |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 790 Other Labor Litigation | ☐ 871 IRS- Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | | |
| ☐ 290 All other Real Property | | | | |

PERSONAL INJURY column (within A TORTS):
☐ 362 Personal Injury – Med. Malpractice
☐ 365 Personal Injury – Product Liability
☐ 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY**
☒ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

PRISONER PETITIONS column:
☐ 510 Motions to Vacate Sentence
**HABEAS CORPUS**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) 28 U.S.C. § 1332.

LENGTH OF TRIAL
Via Ten (10) days estimated (for both sides to try entire case)

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $64,000,000+ | CHECK YES only if demanded in complaint JURY DEMAND: ☐ YES ☒ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY** (See instructions): Judge _____ DOCKET NUMBER _____

DATE February 4, 2003

SIGNATURE OF ATTORNEY OF RECORD
David A. Coulson, Esq.

| FOR OFFICE USE ONLY | | | | | |
|---|---|---|---|---|---|
| RECEIPT# | AMOUNT $150.00 | APPLYING IFP | JUDGE 87676 | MAG. JUDGE 02/04/03 | |