UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

FILED by _____ D.C.
JUN 30 2004
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

Case Number: 03-20256-CIV-MARTINEZ

MOUNT SINAI MEDICAL CENTER OF
GREATER MIAMI, INC., n/k/a MOUNT
SINAI MEDICAL CENTER OF FLORIDA,
INC.,

    Plaintiff,

vs.

HEIDRICK & STRUGGLES, INC. and
HEIDRICK & STRUGGLES
INTERNATIONAL, INC.,

    Defendant.
_____/

**CLOSED CIVIL CASE**

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment **(D.E. No. 61)**, filed on **January 16, 2004**. The Court has carefully considered the motion and is otherwise duly advised. For the reasons more fully described herein, Defendants' Motion for Summary Judgment (D.E. No. 61) is GRANTED.

### I. Procedural History

Mount Sinai Medical Center of Greater Miami, Inc ("Mount Sinai") filed suit in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, on December 20, 2002. The original complaint was never served, and on January 13, 2003, Mount Sinai filed an Amended Complaint, which was timely removed to federal court. Plaintiff filed a Second Amended Complaint (D.E. No. 20) on April 4, 2003, which is the operative complaint. By Order (D.E. No. 38) dated August 29, 2003, the Court partially granted Defendant's Motion to Dismiss the Second Amended Complaint, such that Mount Sinai's surviving claim is for breach

of contract and the implied covenant of good faith and fair dealing.

On January 16, 2004, Defendants (hereinafter also collectively referred to as "H&S") filed their Motion for Summary Judgment (D.E. No. 61), Statement of Undisputed Material Facts and Appendix of Supporting Material (D.E. No. 65), and Affidavit of W. Christopher Clark (D.E. No. 63). On February 2, 2004, Mount Sinai filed its Response (D.E. No. 68), Appendix of Supporting Documents (D.E. No.69), Affidavits (D.E. No. 70), and Statement of Disputed Material Facts (D.E. No. 71). Defendants filed their Reply (D.E. No. 80) on February 9, 2004. By Order (D.E. No. 105) dated March 5, 2004, the Court required the parties to submit supplemental briefs regarding what documents constitute the written contract between the parties; what modifications, if any, were made to the contract; and what express terms of the contract Mount Sinai alleges were breached. On March 18, 2004, Mount Sinai submitted it Sur-Response (D.E.No. 106), and on April 1, 2004, H&S submitted its Sur-Reply (D.E. No. 107). Accordingly, the motion has been fully briefed and is ripe for adjudication.

## II. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Supreme Court stated that

> In our view, the plain language of Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987) The Supreme Court has further stated that "Rule 56(c) therefore requires a

non-moving party to go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex v. Catrett*, 477 U.S. at 324. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

### III. Analysis

#### A. *Relevant Background Facts*[1]

In 1998, Mount Sinai formed a search committee to look for a new President-Chief Executive Officer ("CEO"). Mount Sinai hired H&S to assist the search committee by performing a retained search. Payment of H&S's fee was not contingent upon Mount Sinai hiring one of the candidates presented by H&S. By letter agreement dated June 15, 1998 ("the contract"), H&S agreed to present candidates to Mount Sinai for the position of CEO of Mount Sinai Hospital for Mount Sinai's final decision. The contract provides that H&S would be paid a fee on a retainer basis, estimated at $151,667, and reimbursed expenses as provided for in the contract.

Mount Sinai participated in the process of developing and approving the position specifications for the CEO position. Based upon the position specifications, H&S identified various candidates, one of whom was Bruce Perry ("Perry"). H&S sent to Mount Sinai, on H&S's letterhead, a confidential executive summary on Perry, which provided information about his personal life, education, and work experience.

---

[1] These facts are taken primarily from the concise statement of undisputed facts as set forth in the parties' Joint Pretrial Stipulation (D.E. No. 78), filed on February 9, 2004.

Mount Sinai had an opportunity to and did interview candidates. After the search committee completed interviews with five candidates for the CEO position, Mount Sinai asked four candidates to return to be interviewed further. The search committee voted in favor of and decided to select Perry as its CEO. Perry became CEO of Mount Sinai in January 1999. Perry was awarded a bonus for the years 1999 and 2000 and an increase in base salary at the beginning of 2001. However, Perry was formally terminated in October 2001, and for 2001 Mount Sinai Hospital reported a loss of approximately $64,861,000 in its final audited financial statement.

Mount Sinai alleges that Perry's confidential executive summary contained material misrepresentations of fact as to his past career and omitted facts material to the decision of whether to hire him. For example, the confidential executive summary represented that during the three years Perry ran the Children's Hospital in Washington, D.C., the hospital went from a loss to a modest gain of $300,000. Mount Sinai alleges that in fact, the Children's Hospital incurred a loss each of the three years it was run by Perry. As another example, Mount Sinai alleges the confidential executive summary showed that when Perry left Community Hospitals of California, the hospital was doing well and bond ratings were raised, when in truth, Community Hospitals of Central California reported a loss of approximately $11,944,000 in its final audited financial statement for fiscal year 1996. Last, Mount Sinai alleges the confidential executive summary did not show that after Perry left Community Hospitals of Central California he made a claim for severance benefits in arbitration, which the arbitration panel determined was based upon a forged severance agreement. As a result, Mount Sinai filed suit for breach of contract and seeks various compensatory damages, including but not limited to, fees paid to H&S for the CEO search, fees paid to H&S for other searches, and operational losses incurred by Mount Sinai Hospital in 2001

### B.     *Breach of Implied Covenant of Good Faith and Fair Dealing*

"Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). However, the covenant of good faith and fair dealing is limited in two ways. First, a claim for breach of the implied covenant of good faith and fair dealing must be accompanied by an allegation that an express term of the contract has been breached. *Id.* at 1316. Second, "[t]he implied obligation of good faith cannot be used to vary the terms of an express contract." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001) (citing *Ins. Concepts and Design, Inc. v. Health Plan Services, Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001)).

To establish a breach of the implied covenant of good faith and fair dealing, Mount Sinai

> [M]ust demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but rather by a **conscious and deliberate act**, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

*Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) (citing *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999)) (emphasis added). With the implied covenant of good faith and fair dealing, one party "cannot capriciously exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations." *Ford*, 260 F.3d at 1291 (citing *Sepe v. City of Safety Harbor*, 761 So. 2d 1182, 1185 (Fla. 2d DCA 2000)

As part of the contract, H&S was obligated to "assist in the identification and selection of [Mount Sinai's] President and Chief Executive Officer" and to "present candidates to [Mount Sinai] for [Mount Sinai's] final decision." This is the central purpose of the contract between the parties. H&S presented candidates to Mount Sinai, and Mount Sinai had an opportunity to and did interview five candidates. After Mount Sinai's search committee completed this first set of

interviews, Mount Sinai asked four candidates to return to be interviewed further. After the interviews, Mount Sinai believed the candidates H&S had presented were qualified to be CEO. (D.E. No. 65, Ex. A, at 76-77, 86). Perry was among these candidates. Therefore, H&S complied with the central purpose of the contract and did not breach an express term of the contract. Because H&S did not breach an express term of the contract, Mount Sinai's claim for breach of the implied covenant of good faith and fair dealing fails.

Even assuming, *arguendo*, Mount Sinai could establish a breach of an express term of the contract, its claim of breach of the implied covenant of good faith and fair dealing fails. H&S's actions were neither capricious nor in contravention of the parties' reasonable expectations. *Ford*, 260 F.3d at 1291. H&S presented candidates, whom Mount Sinai found to be qualified. **Mount Sinai made the final decision to hire Perry.** Under the contract, Mount Sinai was not obligated to hire one of the H&S candidates, and H&S's fee would be paid regardless of whether Mount Sinai hired one of its candidates. The evidence before the Court fails to establish that H&S intentionally misrepresented or omitted critical information about Perry. *Shibata*, 133 F. Supp. 2d at 1319. There is no duty under the contract that H&S perform an investigation, extensive background research, or background check. The implied covenant of good faith and fair dealing cannot be used to create such a duty, and therefore, Mount Sinai's claim for breach of the implied covenant of good faith and fair dealing fails. Accordingly, Defendants are entitled to judgment as a matter of law as to this claim. Further, there is no genuine issue of material fact precluding summary judgment. It is

**ORDERED AND ADJUDGED** that

Defendants' Motion for Summary Judgment **(D.E. No. 61)** is GRANTED. Summary Final Judgment be and the same is hereby ENTERED in favor of Defendants and against Plaintiff. Plaintiff SHALL take nothing by this action and Defendant SHALL go hence without day. All pending motions are DENIED AS MOOT, and this case is CLOSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 70 day of June, 2004.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Klein
All Counsel of Record